IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In Re:                              )
                                    )
MARY ANGELA JOHNSON,                )    Case No. 16-04196-DSC-7
                                    )
    Debtor.                         )
_____

## MEMORANDUM OPINION AND ORDER

This case came before the Court on August 14, 2017, for trial[1] on the Motion for Contempt and Sanctions against Mayfair Medical Group (the "Motion) filed by the Debtor, Mary Angela Johnson. Appearing before the Court were Mary Angela Johnson, pro se Debtor; James Bailey, counsel for Mayfair Medical Group; Robert Royston, counsel for Children's of Alabama; and Amy Oliver, Practice Manager for Mayfair Medical Group. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(O).[3] This Court has considered

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings in this adversary proceeding, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this adversary proceeding.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. §157(b)(2)(O) provides as follows:
> (b)(2) Core proceedings include, but are not limited to–
> …
>   (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]

the pleadings, arguments of the Debtor and counsel, the testimony of witness, the exhibits, and the law, and finds and concludes as follows:[4]

## **FINDINGS OF FACTS**[5]

The Debtor filed her bankruptcy petition on October 11, 2016. Mayfair Medical Group ("Mayfair"), a doctor office to which the Debtor had taken her child, was included as a creditor on Schedule E/F filed with the Debtor's petition. Doc. No. 1. A Notice of Chapter 7 Bankruptcy giving notice of the Debtor's bankruptcy filing was sent to Mayfair on October 13, 2016, by the Bankruptcy Noticing Center to Mayfair via first class mail at the address provided on Schedule E/F, specifically 3401 Independence Drive, Birmingham, Alabama 35209. Doc. Nos. 1, 12. In addition to providing the dates of the Meeting of Creditors and certain deadlines, the Notice of Chapter 7 Bankruptcy also contained a list of the names the Debtor had used in the last eight years, specifically Mary Angela MacDonald and Israel Nicole Johnson. *Id*.

The Debtor testified that after she filed her bankruptcy case Mayfair continued to bill and call her regarding the outstanding balance for medical services provided to her child, even though she had called Mayfair after a collection attempt to inform the office of her bankruptcy case. A copy of a letter from Mayfair dated January 3, 2017 and addressed to "Mary MacDonald," as well as a bill dated January 1, 2017, were attached to her Motion. No other bills were attached to the Motion or introduced into evidence at trial. Although her name in her child's patient file at Mayfair was listed as "Mary MacDonald," the Debtor indicated that the name "Mary Angela Johnson" was also in the file since Mayfair made a copy of her driver license identifying her as "Mary Angela

---

[4] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

Johnson" at the time she registered her child as a patient at Mayfair. The Debtor testified that she felt harassed by Mayfair continuing to bill and call her, which led to her filing the Motion before this Court. She further testified that she lost a lot of time preparing documents and attending court hearings; however, she is not employed and therefore did not suffer any loss of wages.

Amy Oliver, Practice Manager at Mayfair, testified that she is in charge of the billing office and the clerical team, among other things. Her testimony reflects that she opens all of the legal notices received in the mail, makes a list of the notices, and gives them to the billing office. Ms. Oliver explained the billing office's procedures for handling bankruptcy notices. The billing office conducts a "parent search," and as long as the name on a bankruptcy notice is the same as the parent's name as it is entered into their system, the notice will be matched to the patient's account. However, Mayfair's system will allow only one name for each parent to be input into the system. Ms. Oliver explained that Mayfair's system does not store social security numbers and therefore cannot search for them. While Mayfair may have a copy of the parent's driver license reflecting a different name for the parent than the one in the system, the copy is an image that cannot be searched electronically. To match up the name on a bankruptcy notice to a driver license on file, someone has to physically go through each patient file that has been sent to collection to pull the driver license copy. Once the name on a bankruptcy notice has been matched to a file, the billing office will clear the account balance and, if the account has been turned over to collections, the collection agency will be notified to stop collections. According to Ms. Oliver, she keeps a list of notices received in the mail so that she can follow up to ensure the work has been done within five to seven days.

3

As to the Debtor, Ms. Oliver testified that a notice of a hearing set in April 2017 was the first notice Mayfair received of the Debtor's bankruptcy case.[6] According to Ms. Oliver she took the notice to the billing office where it took a "little bit of work" to match the notice to the patient account since the name on the notice, Mary Angela Johnson, did not match a name in their system. However, once the match was made, the balanced was cleared and the collection agency was notified that it no longer had the right to collect the debt.

Ms. Oliver testified that she had reviewed Mayfair's records regarding any correspondence sent and phone calls made to the Debtor. She explained that when Mayfair sends letters or bills to a patient's family and does not receive a response, someone from the office then calls the family to confirm that it has the correct address. According to Ms. Oliver, Mayfair was unable to reach the Debtor by phone because the phone number of record had been disconnected.

Ms. Oliver explained that copayments are due when services are rendered. The patient's insurance company will be billed and if there is a remaining balance Mayfair sends a bill; it is usually around 60 days between the date of services rendered to the time the insurance company notifies Mayfair of any balance due. She further explained that Mayfair will send a bill once a month for three months. If there is no response then for the following three months Mayfair sends a letter notifying the parent that there is a remaining balance. After that the account is turned over to collections.

Ms. Oliver testified that the January 21, 2017 bill sent to the Debtor reflects that payments should be made to Mayfair at 3401 Independence Drive. Upon questioning by the Debtor, Ms.

---

[6] Ms. Oliver testified at trial that Mayfair did not receive a copy of the Notice of Chapter 7 Bankruptcy, and that she did not see a copy when she reviewed the patient file. When Ms. Oliver was shown a copy of the Notice of Chapter 7 Bankruptcy she did not see where the other names used by the Debtor were listed until the section was pointed out to her. It is worth noting, however, that the notice of hearing received by Mayfair contained only the name "Mary Angela Johnson."

4

Oliver stated that if a court notice had been mailed to Mayfair at that address then Mayfair could have received such notice. Ms. Oliver explained that Mayfair is in an office building with several other tenants who share the same address. There have been instances where Mayfair received mail addressed to other tenants and vice versa, and furthermore, Mayfair has received mail from other pediatricians' offices based on their proximity and vice versa. She testified that to her knowledge Mayfair would not have sent bills to the Debtor or to any other debtor in bankruptcy if Mayfair had actual knowledge of the bankruptcy case.

The Debtor filed her bankruptcy case on October 11, 2016 and received her Chapter 7 discharge on January 18, 2017. On March 9, 2017, the Debtor filed the Motion that is now before this Court, requesting that the Court hold Mayfair in contempt for violating the "automatic stay and discharge that bankruptcy protection offers." Doc. 33.

## CONCLUSIONS OF LAW

A. Violation of the automatic stay or discharge injunction.

According to the Debtor's testimony, Mayfair continued to send bills and call the Debtor after she filed her bankruptcy case and at least through the time that she filed her Motion. Thus, some of the actions complained of occurred before Ms. Johnson received her discharge while others occurred after her discharge was entered; thus, the Court must consider whether Mayfair violated either the automatic stay or the discharge injunction, or both.

To provide for orderly liquidation or reorganization the Bankruptcy Code stays, among other things, the commencement or continuation of an action against the debtor that could have been brought before the bankruptcy filing, or collection of a claim that arose before the bankruptcy filing. 11 U.S.C. § 362(a)(1). This automatic stay arises by operation of law at the moment the

5

Case 16-04196-DSC7    Doc 113    Filed 09/06/17    Entered 09/06/17 14:45:57    Desc Main
Document      Page 5 of 9

bankruptcy petition is filed regardless of whether affected parties have notice of the filing. 11 U.S.C. § 362(a). *See e.g., Ford v. Loftin (In re Ford)*, 296 B.R. 537, 542 (Bankr. N.D. Ga. 2003).

In addition to the protections afforded by the automatic stay, the Bankruptcy Code provides protection for a debtor upon the debtor's receiving a discharge, which "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). When a debtor receives a discharge, the discharge injunction replaces and operates similarly to the automatic stay. *See Matthews v. United States (In re Matthews)*, 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995); *see also McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 822 - 23 (Bankr. N.D. Ohio 2010). Although § 524(a)(2) does not provide for monetary relief upon a violation of the injunction, courts have held that such a violation "authorizes a court to hold a violating creditor in contempt and award attorneys fees." *Matthews*, 184 B.R. at 599 (citing *In re Elias*, 98 B.R. 332 (N.D. Ill. 1989) and *Kolb v. United States (In re Kolb)*, 137 B.R. 29 (N.D. Ill. 1992)).

There is no dispute that Mayfair sent at least one bill and letter to the Debtor after her bankruptcy filing and prior to her discharge. *See* attachments to Motion, bill dated January 1, 2017 and letter dated January 3, 2017. Further, there is no dispute that the debt Mayfair attempted to collect with that bill is a prepetition debt. Since the automatic stay went into effect when the Debtor filed her bankruptcy case, Mayfair violated the automatic stay.

A violation of the automatic stay is willful when "the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay." *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996). Mayfair contends that it did not receive notice of the Debtor's bankruptcy case. There is no dispute that the Debtor properly listed Mayfair as a creditor and provided the correct address on the schedules

6

she filed with her bankruptcy petition. The Court's CM/ECF system reflects that the Notice of Chapter 7 Bankruptcy was sent to Mayfair at the scheduled address. The testimony of Ms. Oliver leads this Court to conclude that any lack of notice is likely the result of Mayfair's record-keeping system. Ms. Oliver testified that only one name for a parent can be stored in Mayfair's computer system. Parents' social security numbers cannot be stored,[7] and there is no way for the names on parents' driver licenses to be searched electronically. Despite these limitations, it is not impossible for a parent's name on a bankruptcy notice to be matched up with a patient account when the parent's name on the notice and name on the account differs, albeit in such situation matching takes a "little bit of work."

In this case, the Debtor's name, Mary Angela Johnson, was in Mayfair's file on a copy of her driver license, and the name Mary Angela MacDonald was included on the Notice of Chapter 7 Bankruptcy. It is clear that Mayfair was able to match up the Debtor's name with the patient file, as it did so when it received the notice of hearing on the Debtor's Motion seeking damages for violation of the automatic stay. If Mayfair did not have knowledge of the Debtor's bankruptcy due to the limitations of its records system and its failure to manually match the Debtor's name to the patient file, it should not benefit when its lack of knowledge was within its control. It is also possible that Mayfair did not receive the Notice of Chapter 7 Bankruptcy due to misdelivery of the mail. However, the Debtor testified that when Mayfair continued to contact her, she herself called Mayfair to inform it of her bankruptcy filing.

Based on the evidence before it, the Court concludes that Mayfair had knowledge of the Debtor's bankruptcy case. The Court further concludes that whether or not Mayfair intended to violate the stay, Mayfair intended to contact the Debtor after receiving notice of the case. Both

---

[7] It is unclear if parents' social security numbers are not stored due to actual limitations on the system or due to federal privacy laws.

prongs of the test for willful violation of the automatic stay have been met. However, since the Debtor provided only one bill to the Court, it cannot conclude how many times Mayfair violated the automatic stay. While the Debtor testified that Mayfair continued to contact her until the time that she filed her Motion, she did not provide any post-discharge bills or testimony as to how many times Mayfair contacted her post-discharge; thus the Court cannot determine the exact number of times the discharge injunction was violated, if at all.

B. Damages

Section 362(k) of the Bankruptcy Code provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). A finding of willful violation of the automatic stay makes the award of compensatory damages mandatory. *In re Kilby*, 100 B.R. 579, 581 (Bankr. M.D. Fla. 1989). As to punitive damages, determining what constitutes "appropriate circumstances" is left to this Court's discretion. *See Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46, 56 (Bankr. M.D. Ala. 2003).

In this case, the Debtor is unemployed and has acted pro se with regard to this Motion; thus, she has no actual damages from missing work or paying attorneys' fees. However, the Debtor was forced to continue dealing with the kind of conduct that the automatic stay was intended to prevent. The Court, therefore, will order that Mayfair shall pay $250.00 to the Debtor as compensation. While Mayfair has willfully violated the automatic stay by intentionally continuing to collect a prepetition debt after receiving knowledge of the Debtor's bankruptcy, the Court finds that the violation resulted more from a failure to act with diligence in matching the Debtor's Notice of Chapter 7 Bankruptcy with the correct patient file than from a deliberate intent to collect a debt that it knew was being discharged in the bankruptcy. Regardless, Mayfair's violation of the

automatic stay could have been prevented had it acted more diligently.[8] The Court concludes that it is appropriate under the circumstances of this case that Mayfair pay to the Debtor an award of punitive damages in the amount of $100.00 as a result of Mayfair's conduct.[9] It is therefore

**ORDERED, ADJUDGED, AND DECREED** that an award in favor of the Debtor, Mary Angela Johnson, and against Mayfair, is hereby entered in the total amount of $350.00, comprised of $250.00 compensatory damages and $100.00 punitive damages. Mayfair shall pay the award within 14 days of this Order becoming a final, non-appealable Order

Dated: September 6, 2017  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

---

[8] It appears that upon receiving the Notice of Chapter 7 Bankruptcy filing Mayfair failed to expend the time and effort to match the Debtor to the correct patient file but when Mayfair received the notice of a hearing for sanctions before a federal judge it took the time to make the match.

[9] This punitive damage award is intended to indicate to Mayfair the importance of paying attention and ensuring that bankruptcy notices are matched to the parents of a patient. The Court speculates that this is not the first time Mayfair has continued to bill parents in bankruptcy. However, it may have been the first time a debtor has sought damages because parents may not want to risk that Mayfair would refuse to continue treating their children. In this case, the Debtor's Motion indicates that she was dissatisfied with the care her child received at Mayfair and had no intention of continuing to use their services; thus, she may have felt it necessary to ensure Mayfair ceased its collection efforts.

9