# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 16-04196-DSC7** |
| **MARY ANGELA JOHNSON,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| **MARY ANGELA JOHNSON,** | ) | |
| | ) | **Adversary Proceeding No.:** |
| Plaintiff, | ) | **16-00110** |
| | ) | |
| v. | ) | |
| | ) | |
| **U.S. DEPARTMENT OF EDUCATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The Plaintiff, Mary Angela Johnson ("Johnson"), brought an adversary proceeding before this Court by filing a complaint against the Defendant, the United States Department of Education (the "DOE"), wherein she sought to discharge approximately $79,874 in student loan debt incurred for her education in the veterinary and dentistry fields. Although this adversary proceeding has been pending for more than one year, discovery, venue, and other disputes remain. For the reasons stated below, the Motion to Stay (as defined herein) and the Motion to Transfer (as defined herein) are due to be denied, the Motion for Sanctions (as defined herein) is due to be granted, and this Adversary Proceeding is due to be dismissed with prejudice.

The specific matters before the Court are the Motion for Sanctions filed by the DOE (the "Motion for Sanctions") (AP Doc. Nos. 33 and 35); the Motion to Stay filed by Johnson (the "Motion to Stay") (AP Doc. No. 39); the Motion to Transfer Venue of These Chapter 7 Cases to the United States Bankruptcy Court for the District of Alaska (the "Motion to Transfer") (Doc.

No. 125 and AP Doc. 44) filed by Johnson; the Response in Opposition to Plaintiff's Motion to Stay filed by the DOE (the "Opposition to the Motion to Stay") (AP Doc. No. 49); and Response in Opposition to Plaintiff's Motion to Transfer Venue to the District of Alaska filed by the DOE (the "Opposition to Motion to Transfer") (AP Doc. No. 54).[1]

The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2).

Based upon the filings, the representations and arguments of the parties, and for the reasons set forth herein, the Court **FINDS** and **CONCLUDES** as follows:[2]

## I. FINDINGS OF FACT

Johnson filed a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, *et al.* (the "Bankruptcy Code"), with Case No. 16-04196 on October 11, 2016 (the "Bankruptcy Case"). Two days later, she initiated the instant adversary proceeding (the "Adversary Proceeding") by filing a complaint against the DOE that sought to discharge $77,721.28 in student loans under 11 U.S.C. § 523(a)(8) (the "Complaint") (AP Doc. No. 1). The Defendant filed an Answer to the Complaint on January 11, 2017 (AP Doc. No. 7).

---

[1] The Court will refer to the documents in the main bankruptcy case by docket numbers only. When referring to documents in the adversary proceeding, the Court will precede the docket number with "AP." When referring to documents in Johnson's chapter 13 case currently pending in the Alaska Bankruptcy Court (as hereinafter defined), Case No. 18-00087, the Court will precede the docket number with "Alaska BK Case."

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files, and the Court does so in this case. *See IT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

The chapter 7 trustee entered a Report of No Distribution in the Bankruptcy Case on January 17, 2017 (Doc. No. 21), and the Court entered an Order of Discharge on the following day (the "Discharge Order") (Doc. No. 22). The Bankruptcy Case has remained open to allow Johnson to prosecute the Amended Complaint (as defined herein) and various other matters.[3]

The DOE served Johnson with its First Set of Interrogatories and its First Set of Requests for Production in January 2017 (collectively, the "Discovery Requests"). Johnson notified the DOE that she objected to the Discovery Requests, and according to the DOE, she provided no further response. As a result of Johnson's failure to respond, the DOE filed a Motion to Compel (AP Doc. No. 10). About two weeks later, Johnson amended the Complaint and increased the amount of student loan debt to $79,874.44 (the "Amended Complaint") (AP Doc. No. 15).

The Court held a hearing on the Motion to Compel on May 17, 2017. The DOE maintained that Johnson provided some documents which were responsive to two requests, but she otherwise did not comply with the Discovery Requests. After hearing arguments, the Court granted the Motion to Compel and entered an Order that compelled Johnson to respond to the Discovery Requests no later than July 21, 2017 (the "First Discovery Order") (AP Doc. No. 16). As part of the First Discovery Order, the Court set another status conference for July 19, 2017.

Instead of producing additional discovery responses as required, Johnson filed a Second Objection to the Discovery Requests and averred that her disclosure to the DOE of personal and privileged information could serve to help certain individuals continue their efforts to harm her (the "Second Objection") (AP Doc. No. 18). Johnson did not disclose the names or actions of the individuals, and their identity and the nature of their alleged actions remain unknown to the Court.

---

[3]After entry of the Discharge Order, in matters not related to the DOE or this Adversary Proceeding, Johnson filed five motions for contempt and two motions that alleged violations of the automatic stay and misconduct by various other creditors.

The Court held a hearing on the Second Objection on July 19, 2017 (the "July 19, 2017,

hearing"). During the hearing, the Court stated, among other things:

> Ms. Johnson, we are talking about your student loans. Obviously, it's a significant amount of money, both to you and the Department of Education. You filed the complaint and you are the one that's seeking a discharge of your student loans and– you've got it–in this Circuit, the *Brunner* test, to the best of my estimation, is still the vehicle through which I have to make that decision. But I can't make a special exception off the top of the bat for you. I've got to treat discovery and the process equally for you as I would for any litigant that comes in seeking relief before this Court. Here is my goal: I understand from reading your pleadings, and I hear where you are coming from, I know you have some sensitive matters that you are concerned about. What I want to see, is I am not going to force the Department of Education to not have information they need, that they believe they have got, to defend the lawsuit. Again, you are the one that brought the suit. I have to balance that with your sensitivities towards factual situations in your life that may be very difficult to discuss, and that certainly you don't want in the public domain, as it were. What I am looking for, and what I am going to ask both parties to do; I have already granted–Mr. Ragland is right–I've granted his Motion to Compel. I will tell you that every experience I have had in this Courtroom with Mr. Ragland on behalf of the federal government is that he is an honest man and he has always been forthright in this Courtroom, and I have every reason to believe that he is going to respect whatever it is that I order with regard to discovery or the documentation as it relates to your sensitive situations. However, they are entitled to discovery to answer your lawsuit. So, what I'm looking for is not just a blanket statement that you don't want to comply with discovery. I'd like to see the parties narrow down what it is that you really don't feel you're not obligated to disclose; and I would like for your client to narrow down whatever is relevant to the defense of her lawsuit for nondischargeability. I need a finite list of what documents you are referring to, Ms. Johnson, that you don't want to disclose. I think there is a wide berth, there is a lot of flexibility for me to determine what should be put on the public record and what should not put on the public record. There is a difference in discovery, Ms. Johnson, between what is published on the CM/ECF record as a matter for public consumption, versus what I can either hear in camera or in this courtroom. I can set a special docket if I've got to decide some issues. So I do not want you to think that just because you turn it over to the Department Education that it's going to become public record. I think that I have the ability to place some things under seal if it's appropriate, to limit anyone that can attend hearings, and I am also going to take into consideration if there is something that you believe will cause your harm. I have got to have some kind of a statement from a medical professional of some kind that says Ms. Johnson does not need to discuss or disclose this because.... I will take that into consideration. But, I want the lawsuit to proceed, and they are entitled to their discovery and, yes, I have already approved and ordered on their Motion to Compel.

4

After the hearing, the Court entered an Order stating that "[w]hile this Court is sensitive to [Johnson's] concerns, the [DOE] must be permitted to conduct reasonable discovery under the Federal Rules of Bankruptcy Procedure to prepare its defense to [Johnson's] complaint" (the "Second Discovery Order" and together with the First Discovery Order, the "Discovery Orders") (AP Doc. No. 21). Consequently, pursuant to the Second Discovery Order, the Court sustained, in part, and denied, in part, the Second Objection and stated that if Johnson opposed the disclosure of specific documents, she could file a list of the documents and could request that certain information be redacted or produced under seal, or she could move for a protective order pursuant to Rule 7026 or 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Order further required that all discovery be completed no later than September 22, 2017, and it set another status conference for September 20, 2017 (the "September 20th Status Conference").

The DOE averred that it had no communications with Johnson between July 2017 and September 2017. The Court held the September 20th Status Conference as scheduled, and Johnson did not attend. As a result of the discovery disputes, the Court held a total of six status conferences, three of which Johnson did not attend.

The Court entered a Trial Order (the "Trial Order") on September 25, 2017 (AP Doc. No. 23). The Trial Order set deadlines to file and serve witness and exhibit lists by October 25, 2017, and to provide copies of exhibits to the Court by November 8, 2017. The Trial Order scheduled the trial on the Amended Complaint for November 15, 2017, at 9:30 a.m. (the "Initial Trial Setting").

On November 12, 2017, three days before the Initial Trial Setting, Johnson filed an Emergency Motion to Continue Trial Order and averred that she had "been placed in Protective Custody for continued Domestic Violence attacks on herself and her children" (the "Emergency

5

Motion to Continue") (AP Doc. No. 25 at 2). In further support of the Emergency Motion to Continue, Johnson maintained that she "was not allowed to take any items/documents with her initially, and is currently working on acquiring the necessary documentation to proceed with the proceeding" (*Id.*).

On the same day, Johnson filed an Emergency Motion to Appear Via Phone or Video requesting that, for the safety and protection of herself and family, she be allowed to appear via phone or video conference on all further matters (the "Emergency Motion to Appear Telephonically" and together with the Emergency Motion to Continue, the "Emergency Motions") (AP Doc. No. 26). The DOE filed a Response in Opposition, which stated that the Emergency Motions were due to be denied based, in part, on Johnson's failure to comply with the Discovery Orders (the "Response") (AP Doc. No. 28). According to the exhibits attached to the Response, the DOE communicated with Johnson via email regarding the discovery disputes, but the parties were unable to resolve any of the issues.

The Court held a hearing on the Emergency Motions and the Response on November 14, 2017, for which Johnson appeared telephonically. After the hearing, and despite the DOE's opposition, the Court entered an Order and Notice (the "November 16th Order") that granted the Emergency Motion to Continue and continued the trial of the Amended Complaint to February 15, 2018 (the "Continued Trial Date") (AP Doc. No. 30). The Court also granted, in part, and denied, in part, the Emergency Motion to Appear via Telephone or Video. Specifically, the Court ruled that Johnson was authorized to appear telephonically for most hearings, as long as she made appropriate arrangements with the Courtroom Deputy at least three days before the scheduled hearing date. In the November 16th Order, the Court specifically stated that Johnson was *not* authorized to appear by telephone or video for the trial of her Amended Complaint. Finally, the

Court warned the parties that if the Court determined that there was a failure by either party to make disclosures, to cooperate in discovery, or to obey a discovery order, the Court may address any such conduct pursuant to Bankruptcy Rule 7037.

The DOE filed an Amended Motion for Sanctions on January 23, 2018, that sought various sanctions against Johnson including the dismissal of this Adversary Proceeding with prejudice (the "Motion for Sanctions") (AP Doc. Nos. 33 and 35). As grounds for the Motion for Sanctions, the DOE averred:

> 9.    Ms. Johnson has failed to comply with this Court's discovery orders of May 17th and July 25th and the Trial Order of September 25th. A year has passed since discovery was served on Plaintiff, and she has only produced to Defendant documents which, at best, could be deemed to be responsive to 1 of 36 requests for production and to 1 of 28 interrogatories. Ms. Johnson has rebuffed the undersigned's repeated attempts to discuss the outstanding requests in an attempt to facilitate discovery in this litigation. Rather than producing responses to Defendant's discovery. Ms. Johnson has objected on general grounds and attempted to amend her complaint without leave of Court by filing a rambling 142 page "Amended Complaint." Plaintiff's non-compliance with this Court's orders has unfairly prejudiced the Department of Education in defending this lawsuit.

> 10.    Finally, it appears that Ms. Johnson has been less than forthright with the Court and the undersigned about the circumstances for her residing out of state and for seeking a continuance of the trial as well as seeking to attend this trial remotely by video-conference or telephone. Based on a search of AlaCourt, the State of Alabama's electronic court docket and electronic filing system, the undersigned has determined that Ms. Johnson's appearance bond in a state criminal case has been revoked (*see State of Alabama v. Mary Angela Johnson*, Case No. CC 2016-4203, docs. 67, 98, 100, 130, 141); that the State is seeking to revoke her probation for a state criminal conviction for which she has been sentenced to 3 months in county jail (*see State of Alabama v. Mary Angela Johnson*, Case No. DC 2016-6829, docs. 17 and 19); that a restraining order for the protection of a third party against abuse has been entered against Ms. Johnson and not for her protection (*see Michael Ward v. Mary Angela Johnson,* Case No. DR-16-500618, docs. 1 and 33); and that she is the subject of an ongoing state criminal investigation for, among other things, the felony of aggravated stalking in the second degree (*see State of Alabama v. Mary Angela Johnson*, Case No. CC 2016-4203, doc. 67, numbered paragraph 13).

> 11.    Based on the foregoing, Plaintiff has disregarded this Court's orders, has been evasive and non-responsive to Defendant's discovery requests, and has

> sought to simultaneously pursue her claim against the Department of Education while making herself generally inaccessible for purposes of this litigation. Her failure to cooperate in discovery, disobedience of Court discovery and trial orders and lack of candor and good faith in seeking a continuance have unfairly prejudiced Defendant and resulted in a waste of the Court's limited resources….

(AP Doc. No. 35 at 6-7). The following day, January 24, 2018, the Court held another status conference for which Johnson did not appear. The hearing on the Motion for Sanctions and the trial of the Amended Complaint were scheduled for February 15, 2018 (the "February 15th hearing" or "February 15th trial setting"). The DOE maintained that it did not receive any additional discovery responses or any witness or exhibit lists from Johnson prior to the February 15th trial setting as required by the Trial Order.

Johnson did not appear in person for the hearing and trial on February 15, 2018. Further, she failed to make timely arrangements with the Courtroom Deputy to appear telephonically on the Motion for Sanctions pursuant to the November 16th Order. Nonetheless, the Court permitted Johnson to appear telephonically for the hearing, and gave her an opportunity to argue why she should be allowed to oppose the Motion for Sanctions via telephone in spite of her failure to comply with the November 16th Order. Johnson did not provide the Court with any reason for her failure to make appropriate arrangements. Instead, Johnson maintained that she had instructed a third party to file numerous motions for continuance and motions to transfer on her behalf, but she did not know the date. The Court did not receive any such pleadings prior to the February 15th hearing.

Johnson further alleged that she had medical issues that prevented her from traveling and that she was in a "protective environment for domestic violence" that prohibited her from appearing in the Northern District of Alabama. Johnson did not offer any proof to substantiate these allegations. She also made an oral request that the Court recuse itself based on Johnson's

claim that the undersigned judge was a "good friend" of the Assistant U.S. Attorney assigned to represent the DOE. Johnson moved orally to continue the trial so she could have an opportunity to appear and prosecute the Adversary Proceeding. The DOE opposed Johnson's request for a continuance.

After hearing arguments from the parties, the Court closed the evidence and stated that it would take the Motion for Sanctions, the Amended Complaint, and Johnson's oral motions under submission.

Following the conclusion of the hearing, the Court learned that the Clerk's office had, that day, received the Motion to Stay via U.S. Mail. The Motion to Stay essentially contained the same requests as those made by Johnson via telephone during the February 15th hearing (AP Doc. No. 39).

The Clerk of Court also received, via U.S. Mail, a copy of an Order Dismissing Complaint that was entered by the U.S. Bankruptcy Court for the District of Alaska (the "Alaska Bankruptcy Court") on February 5, 2018, regarding Adversary Proceeding No. 18-90001 (the "Dismissal Order") ("AP Doc. No. 41). According to the Dismissal Order, an individual who represented herself as Mary Angela Johnson filed a motion to consolidate the Adversary Proceeding with a new adversary action filed in the Alaska Bankruptcy Court. Because the complaint filed in the new adversary action mirrored the claims and the relief sought by Johnson against the DOE in the instant Adversary Proceeding, the Alaska Bankruptcy Court interpreted the motion to consolidate as a motion to transfer. The Alaska Bankruptcy Court stated that "'[i]t is … the general policy of the bankruptcy code that all proceedings in a bankruptcy case be conducted in the district in which the bankruptcy petition was filed, except where the code expressly specifies another venue. Therefore, the Bankruptcy Court for the District of Alaska is not the proper venue for Johnson's

9

adversary proceeding'" (AP Doc. No. 41 at 3) (quoting *Briney v. Burley (In re Burley)*, 738 F.2d 981, 988 (9th Cir. 1984)). Accordingly, the Alaska Bankruptcy Court held:

> In this instance, the duplicative Alaska case must be dismissed. Obviously, not only is there another district where the debtor's adversary proceeding could have been brought, the debtor previously filed the same suit in the Northern District of Alabama where her underlying bankruptcy case was filed. Moreover, that action has been pending for more than a year, trial in that action is currently scheduled to begin in less than two weeks, and the motions to dismiss are pending. The court also notes that there is no apparent connection between the case and Alaska other than the filing of the duplicate case…. The filing of the duplicate action in a distant court on the eve of trial strongly suggests an intent to interfere with the scheduled trial in the original action. These factors strongly weigh in favor of dismissal of this adversary under § 1406(a)…. Even if the adversary proceeding was filed in a proper venue, this court would decline to transfer venue as Johnson requests. "The basic and vital functions of the bankruptcy court will be seriously fragmented and hampered if proceedings such as this are commenced and retained in courts other than 'home court' without first obtaining leave of the latter."

*Id*. at 4 (citing *Nike, Inc. v. Nat'l Shoes, Inc. (In re Nat'l Shoes, Inc.)*, 18 B.R. 507, 509 (Bankr. D. Maine 1982)).

Based on Johnson's arguments during the February 15th hearing and her Motion to Stay (Doc. No. 39), and despite the DOE's opposition, the Court entered an Order Granting Limited Time for Additional Submissions on February 20, 2018, and reopened the evidence and the record for the limited purpose of allowing Johnson to file, within 30 days, documents to substantiate her circumstances in a "protective environment for domestic violence" with "medical issues that prevent her from traveling" to the Northern District of Alabama ("February 20th Order") (AP Doc. No. 40). The evidence and record were also reopened for the limited purpose of allowing the DOE to file, within 30 days, objection(s), if any, to the Motion to Stay, and certified copies of pleadings and other documents from a circuit court or a district court in the State of Alabama that refuted Johnson's assertions and substantiated the allegations contained in the Motion for Sanctions (*Id*.).

In response to the February 20th Order, Johnson did not submit any evidence to substantiate

her claims that she was currently in a "protective environment for domestic violence" or that she had "medical issues that prevent her from traveling" to the Northern District of Alabama. Nor did Johnson attempt to file any documents under seal, file a request for redaction, or seek a protective order. Instead, Johnson filed the Motion to Transfer on March 2, 2018 (Doc. No. 125 and AP Doc. No. 44). As grounds therefor, Johnson averred that she had to leave the State of Alabama for "domestic violence related crimes," that she was currently in Alaska, and that the submission of any evidence would "put [Johnson] and her family in great danger" (*Id.* at 2). Johnson also stated that the evidence and witnesses were primarily in Alaska. She maintained that venue should be transferred to the Alaska Bankruptcy Court, and that denial of her Motion to Transfer would represent "nothing more than the typical bad faith and bad ethical decisions that Alabama Judges are so famous for" (*Id.* at 6).

The DOE filed its Submission of Evidence in Response to the February 20th Order on March 22, 2018 (AP Doc. No. 48). The filing included certified copies of court documents from cases involving Johnson before the District Court of Jefferson County, Alabama-Criminal Division; the Circuit Court of Jefferson County, Alabama-Criminal Division; and the Family Court of Jefferson County, Alabama (*Id.*, Exs. 2-15). The certified court documents revealed the status of criminal matters pending against Johnson, including a motion to revoke her probation in one case (*Id.*, Ex. A-4 at 2-5); an order revoking her bond in another case (*Id.*, Ex. B-4 at 2); and an order of protection enjoining Johnson from threatening, harassing, stalking, or otherwise communicating with the victim in a third case (*Id.*, Ex. C-2 at 2-5). The certified court documents indicated no threats against, or protection for, Johnson or her children as she has alleged. In fact, the court documents included an order from the Family Court of Jefferson County, Alabama, dated October 11, 2017, that granted the victim's motion to dismiss the Protection from Abuse

11

Complaint filed against him by Johnson (*Id.*, Ex. 14 at 2).

The DOE filed a Response in Opposition to Plaintiff's Motion to Stay on March 22, 2018

(AP Doc. No. 49). In its Response, the DOE maintained, among other things, that:

> Johnson chose to litigate in this Court --- filing both her Chapter 7 bankruptcy petition and the instant adversary proceeding in the Northern District of Alabama in October, 2016. Since that time, the Department of Education, through counsel, has diligently litigated this case despite the Johnson's uncooperative conduct --- repeatedly stone-walling in response to pertinent discovery requests, refusing the undersigned's good faith efforts to meet and confer about this case, ignoring this Court's discovery and other pretrial orders, and failing to attend pretrial status conferences. Regardless, the Department of Education, through counsel, invested significant time and effort to prepare this case and was prepared to proceed to trial on November 15, 2017. However, three days before trial, Johnson filed "emergency" motions, seeking, among other things, a 90 day continuance of trial, alleging that she had been placed in "Protective Custody" because of "Domestic Violence attacks on herself and her children." Further, during a teleconference held to discuss the "emergency" motions, Johnson informed the Court that she was currently living in an undisclosed location outside the state of Alabama and under the protection of a restraining order entered for her protection from abuse by a third party. In her emergency motion for continuance, Johnson reassured that she was "currently working on acquiring the necessary documentation to proceed with this proceeding." *See* Emergency Motion to Trial Order (doc. 25), ¶ 5. The Court granted a continuance of the trial until February 15, 2018. However, during the interim between November 15th and February 15th, Johnson produced no discovery responses, no exhibit list, no witness list; made no effort to confer with the undersigned counsel about this case; missed a pretrial status conference set before the Court, and failed to comply with this Court's explicit orders about appearing by phone for pretrial status conference. Further, at trial, Johnson was a no-show but instead telephoned the Court in direct contradiction to the Court's explicit order that she appear in person for trial. By telephone, Johnson argued at trial that she should be allowed another continuance of the trial alleging that she was in a "protective environment for domestic violence" and unable to travel to attend trial in person because of undisclosed medical issues. However, to date, Johnson has produced no evidence of either being in a protective environment for domestic abuse or suffering any medical issue which prohibits her travel to Court for trial. Instead, the public records relating to Plaintiff's various litigation in state court appear to suggest other reasons that Johnson may have fled the State of Alabama.

(*Id*. at 2-3). The DOE filed a Motion for Leave to File Corrected Response (the "Motion for Leave") on March 23, 2018, to correct typographical errors in the Response (AP Doc. No. 50). The Court denied the Motion for Leave with its Order dated April 25, 2018 (AP Doc. 57).[4]

Johnson filed a chapter 13 petition before the U.S. Bankruptcy Court for the District of Alaska on March 22, 2018, in Case No. 18-00087-GS (the "Alaska Bankruptcy Case"). The Alaska Bankruptcy Court entered an Order to Show Cause re: Dismissal (the "Show Cause Order") on March 28, 2018. According to the Show Cause Order, the court noted that Johnson did not meet the requirements for filing a chapter 13 case because she did not have regular income to fund a plan. The court questioned whether the Alaska Bankruptcy Case was filed in good faith, and expressed doubts regarding the purpose for which the case was filed. Consequently, the court set a show cause hearing for April 18, 2018, on whether the Alaska Bankruptcy Case should be dismissed or converted (Alaska BK Case, Doc. No. 11).

In the instant Adversary Proceeding, the DOE filed a Response in Opposition to Plaintiff's Motion to Transfer Venue to the District of Alaska on April 3, 2018 (the "Response in Opposition to the Motion to Transfer") (AP Doc. No. 54). In the Response in Opposition to the Motion to Transfer, the DOE stated that "[r]ather than calculated to ensure the just, speedy, and inexpensive determination of this action, the motion to transfer venue is nothing less than an affront to the integrity of this Court and the administration of justice in the entirety of the United States Bankruptcy Courts nationwide" (*Id*. at 3-4). The DOE further asserted that the "facts of record establish that a change in venue is not warranted because, otherwise, the Plaintiff's bad faith conduct and lack of candor would be unfairly rewarded, the Court's and the parties' limited

---

[4] Johnson did not appear telephonically or in person at the April 25th hearing on the DOE's Motion for Leave.

resources already invested towards the resolution of this case uselessly wasted, and the Defendant's defense of this case unfairly prejudiced" (*Id*. at 5). The DOE averred that the evidence of record established that Johnson left the State of Alabama not for safety reasons but, rather, to avoid the imposition of her sentence and to avoid being subjected to further investigation by law enforcement officials for other potential criminal offenses (*Id*. at 6). The DOE further asserted that the evidence of record established that Johnson acted in bad faith by filing motions to continue the trial, the Motion to Stay, and the Motion to Transfer. Additionally, the DOE maintained that the evidence of record, in combination with Johnson's documented uncooperative and evasive manner during the pretrial proceedings in this case, established a larger pattern by which she has unfairly and improperly undermined the DOE's efforts to pursue relevant discovery, marshal material evidence, and to defend the Adversary Proceeding (*Id*. at 6-7). The DOE averred that transferring the Adversary Proceeding at this late stage in the proceeding would be "patently unfair" to the DOE. Specifically, the DOE stated that:

> Despite Johnson's uncooperative conduct and motions filed in bad faith seeking, among other things, delay, the Department of Education, through counsel, has invested significant time and effort to prepare this case, to engage with Plaintiff during pretrial proceedings, to comply with the Court's orders, to try this case, and to secure a resolution of this litigation.

> As a result, this Court, likewise, has invested significant time and court resources toward resolving this litigation. Not only has there been considerable motion practice before this Court regarding discovery, pretrial disclosures, sanctions, motions to continue trial, and motions for stay, the Court has called the case for trial, closed the evidence, and also re-opened the trial evidence temporarily to both parties. In ruling on motions, conducting hearings and in trying the case, this Court has a depth of experience with this litigation which would be wastefully squandered if the Court granted a transfer of venue to another Court.

(*Id*. at 7).

The Court held a hearing on the Motion to Transfer and Opposition to Motion to Transfer on April 4, 2018 (the "April 4, 2018, hearing"). Johnson again failed to make timely arrangements

14

with the Courtroom Deputy to appear telephonically for the hearing pursuant to the November 16th Order. Despite this fact, the Court permitted Johnson to appear telephonically. Johnson reiterated the arguments contained in the Motion to Transfer based on her claims that she had relocated to Alaska, and that all of the parties and evidence were located in Alaska. Following the April 4, 2018, hearing, the Court took the Motion to Transfer and Opposition to Motion to Transfer under submission with the other pending matters.

On April 6, 2018, the Alaska Bankruptcy Court issued a second show cause order regarding Johnson's failure to satisfy the credit counseling requirement under § 109(h) of the Bankruptcy Code (Alaska BK Case, Doc. No. 18) (the "Second Show Cause Order" and together with the Show Cause Order, the "Show Cause Orders").

The Alaska Bankruptcy Court held hearings on the Show Cause Orders on April 18, 2018. At the hearing, Johnson claimed, among other things, that that court's mailings were being sent to an incorrect address. Johnson also maintained that she had taken or attempted to take credit counseling prior to the Alaska Bankruptcy Case filing but did not have the documents evidencing her attempts. Therefore, in order to permit Johnson to prepare for the Show Cause Orders, the Alaska Bankruptcy Court continued the hearings until May 8, 2018 (Alaska BK Case, Order to Show Cause Re: Dismissal for Failure to Comply with Prior Court Orders (the "Third Show Cause Order")) (Doc. No. 38 at 3). In the Third Show Cause Order, the Alaska Bankruptcy Court required Johnson to file a number of documents on or before May 2, 2018 (*Id.*). Instead of filing the documents as required, Johnson filed three motions on May 7th, one day prior to the continued hearing date in the Alaska Bankruptcy Case: (1) a motion to continue the May 8th hearings; (2) a motion to strike the transcript of the 341 meeting of creditors; and (3) a motion to recuse the Alaska Bankruptcy Court (collectively, the "May 7th Motions"). In Johnson's motion to recuse, she

alleged the Alaska Bankruptcy Court "continue[s] to refuse to address Plaintiff's concerns [ie, among other things, that she recently had to move for the safety and security of herself and her children] and insists on frivolous and impartial questioning [regarding the credit counseling, lack of unsecured creditors, and the instant Adversary Proceeding]" (Alaska BK Case, Doc. No. 34). According to the Third Show Cause Order, Johnson did not appear at the May 8th hearing (*Id*. at 4). Consequently, the Alaska Bankruptcy Court ordered, among other things:

> In an abundance of caution, the court shall give the debtor one final opportunity to make the payments required under the court's order on the fee installments, and to provide the documents establishing her efforts to obtain credit counseling pre-petition. The debtor must cure these deficiencies by **4:00 p.m. on Friday, May 18, 2018**. *Should the debtor fail to: (1) pay the first two installments of the filing fee totaling $100.00; (2) file a written response to the pending Credit Counseling OSC[5] including all documents in support (email from credit counseling agency and receipt); (3) file a written response to the pending OSC regarding the good faith in filing this chapter 13; and (4) file a notice of change of address form reflecting her correct mailing address, the court* **shall dismiss this bankruptcy without further court order**.

(*Id*. at 6) (emphasis in the original). In the event that Johnson cures the deficiencies as set forth above, the Alaska Bankruptcy Court will conduct the show cause hearings and hearings on the May 7th Motions on May 30, 2018 *(Id*. at 7).

Johnson made similar averments before this Court in the Northern District of Alabama about a lack of service of court mailings. Specifically, Johnson averred in the Bankruptcy Case that "the Court knew in November that Debtor was removed from her home and could not be served [] which prejudiced debtor in an ex parte hearing that was allowed to take place …." (Doc. No. 124). The record reflects that the DOE served the pleadings on Johnson at the same address listed on her Complaint, her Amended Complaint, and her chapter 7 petition. The Clerk of Court, through the Bankruptcy Noticing Center, sent notices to Johnson via email at the electronic address

---

[5] The term "OSC" refers to the order to show cause.

that she provided in the Debtor's Electronic Noticing Request (Doc. No. 4). At no time in the Bankruptcy Case or this Adversary Proceeding did Johnson update her Electronic Noticing Request to reflect a new email address, cancel her Electronic Noticing Request, or designate a new, postal mailing address for service.

## II. CONCLUSIONS OF LAW

**The Motion to Stay**

The Motion to Stay is, in essence, a motion to recuse. In support of the Motion to Stay, Johnson maintains, among other things, that "[d]espite Plaintiff's immediate objections, this Court allowed Defendants to perform discovery" (AP Doc. No. 39 at 1). Johnson further asserts that the Court "again and again allowed Defendant to continue and continue this case to disadvantage Plaintiff despite her objections" and the "Court responded by publicly praising Defendant's attorney on court record and continued to drag this case out to prejudice the Plaintiff – who is appropriately unknown to the presiding judge" (*Id*.). Johnson further avers that she had to be removed from her home for "safety issues" and the Court "refused Plaintiff an opportunity to appear via telephonically and/or appearance via satellite" (*Id*.). Johnson requests that the Court transfer jurisdiction and maintains that the Adversary Proceeding should be heard by a "different Jurist" that "will not collude with his good friend, Defendant's attorney" (*Id*. at 2). At the February 15th hearing, Johnson also argued that based upon the Court's "public statements about how [the Defendant's counsel] is the [Court's] friend," the Court should recuse itself and transfer the Adversary Proceeding to the "appropriate court."

17

Disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455.[6] Section 455 provides, in pertinent part:

> (a)    Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)    He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;….

28 U.S.C. § 455(a) and (b)(1). This section "creates two conditions for recusal." *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007). Section 455(a) compels disqualification for the appearance of partiality, while § (b)(1) compels disqualification for actual bias and prejudice. There is considerable overlap between § 455(a) and (b)(1). Section "455(a) expands the protection of § 455(b)(1), but duplicates some of its protection as well…." *Litkey v. U.S.*, 510 U.S. 540, 552 (1994). There is a high threshold under both § 455(a) and (b)(1) for disqualification. *Id.* at 558 (Kennedy, Jr., concurring).

Section 455(a) requires that a judge recuse himself when his impartiality might reasonably be questioned. *Tucker v. Mukamal*, 616 F. App'x. 969, 971 (11th Cir. 2015). Under § 455(a), recusal is appropriate only if "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the

---

[6]Fed. R. Bankr. P. 5004(a) – *Disqualification* states:

> A bankruptcy judge shall be governed by 28 U.S.C. § 455 and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

18

judge's impartiality." *Amedeo*, 487 F.3d at 828 (citation omitted). There must be some factual basis to support an allegation of partiality; recusal cannot be based on unsupported, irrational, or highly tenuous speculation. *United States v. Cerceda*, 188 F.3d 1291 (11th Cir. 1999). "Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Id.*

"The standard [for recusal under § 455(a)] is an objective one; hence, the judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *Haas v. Haas (In re Haas)*, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003) (citing *United States. v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990)) (quotations omitted). *See also In re McKeever*, No. 10-92243, 2016 WL 4919950, at *3 (Bankr. N.D. Ga. Sept. 9, 2016) (same). The same objective standard applies to § 455(b)(1) as with § 455(a). *United States v. Coble*, No. 15-00285, 2018 WL 564948, at *4 (S.D. Ala. Jan. 25, 2018) (citation omitted).

Section 455(b)(1) requires that a judge disqualify himself where he actually "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Amedeo*, 487 F.3d at 828 (citing 28 U.S.C. § 455(b)(1)). The litigant must present evidence of a "negative bias or prejudice [which] must be grounded in some personal animus or malice that the judge harbors against him." *In re Damerau*, 525 B.R. 799, 803 (Bankr. S.D. Fla. 2015) (citing *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir. 1985)).

Under § 455(a) and (b)(1), "[t]he bias or prejudice must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case." *Amedeo*, 487 F.3d at 828-829 (citing *McWhorter v. City of Birmingham*, 906 F.2d 674, 687 (11th Cir. 1990)). *See also Miccosukee Tribe of Indians of Fla. v. Cypress*, 56 F. Supp. 3d 1324, 1328

19

(S.D. Fla. 2014). The "'general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources,' unless 'a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party.'" *Coble*, 2018 WL 564948, at *5. "The exception of the general rule requiring an extrajudicial source is pervasive bias. The pervasive bias exception supports disqualification if the court's predisposition is "so extreme as to display clear inability to render fair judgment." *Id*. at 1329 (citing *Liteky*, 510 U.S. at 551).

> For bias to be sufficient to disqualify a judge, it generally must arise from extrajudicial sources. *See In re Walker*, 532 F.3d 1304, 1310–11 (11th Cir. 2008). If instead, the alleged bias arises from the judge's remarks or opinions during the course of judicial proceedings (and not from extrajudicial sources), the party moving for disqualification must clear a much higher hurdle. The opinions formed by a judge on the basis of facts introduced or events occurring during judicial proceedings are not a basis for a bias or partiality challenge unless they "display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Klayman v. City Pages*, 650 F. App'x 744 (11th Cir. 2016) (quoting *Liteky*, 510 U.S. at 555).

Additionally, judicial rulings generally do not demonstrate pervasive bias. *Liteky*, 510 U.S. at 555-56 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014) ("[n]either rulings adverse to a party nor friction between the court and counsel constitute pervasive bias requiring recusal.") (citing *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983)); *United States v. Singletary,* 196 F. App'x 819, 820 (11th Cir. 2006) ("adverse rulings alone do not provide a party with a basis for holding the court's impartiality is in doubt."); *Dae Eek Cho v. US*, 687 F. App'x. 833, 840 (11th Cir. 2017) (same). In *Litkey*, the Supreme Court reasoned that judicial rulings "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." 510 U.S. at 554.

20

Moreover, § 455 "does not invite recusal whenever it is requested by a party." *In re McKeever*, 2016 WL 4919950, at *3. "[T]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id.* "While 28 U.S.C. § 455 imposes a duty on the Court to recuse where any of the statutory grounds exist, there is a corresponding duty not to do so if cause for recusal has not been shown." *Haas*, 292 B.R. at 175. [7] The courts have reasoned:

> When considering disqualification, the district court is not to use the standard of mere ... suspicion ... that is because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

*Id.* (citing *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)). *See also In the Matter of Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir. 1988) ("[j]udges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping.") (citation omitted); *United States v. Pungitore,* 15 F. Supp. 2d 705, 715 n. 4 (E.D. Pa. 1998) ("[a] liberal recusal policy would encourage judge shopping."); *Scott v. Pryor (In re Chandler's Cove Inn, Ltd.),* 74 B.R. 772, 773 (Bankr. E.D.N.Y. 1987) ("recusal motions which are too liberally granted are tantamount to unilateral 'judge shopping' and may be used for a delaying tactic, for their disposition requires a serious investment of judicial time and thought.").

---

[7]The Court is well aware of its obligation to recuse when the statutory grounds exist. Indeed, for the reasons set forth on the record, the Court recused itself from hearing Johnson's Motion for Contempt and Sanctions against Mayfair Medical Group in the underlying Bankruptcy Case (Doc. No. 64). In the instant Adversary Proceeding, no such grounds exist and cause for recusal has not been shown.

Finally, a motion for recusal must be timely filed. *United States v. Hinton*, No. 5:13-Cr-32, 2014 WL 12690116, at *4 (M.D. Ga. May 29, 2014) (citing *Kolon Indus. Inc. v. E.D. DuPont de Nemours & Co.*, 748 F.3d 160, 168 (4th Cir. 2014)) ("timeliness is an essential element of a recusal motion which is judicially implied in § 455") (citations omitted); *Nichols v. Volunteers of Am., N. Ala., Inc., et al*, Nos. 3:08-CV-501, 2013 WL 12146126 (N.D. Ala. Aug. 9, 2013). A party must exercise due diligence when seeking recusal pursuant to § 455 and file his or her motion within a reasonable time after he or she learns or should have known of the grounds warranting recusal. *Id.* (citing *Kolon*, 748 F.3d at 171) (holding the plaintiff's motion for recusal was untimely because it "knew every fact that eventually predicated its recusal motion almost a year before it first suggested recusal might be appropriate ... and over a year before it finally filed its first recusal motion"). *See also Drake v. Birmingham Bd. of Educ.*, 476 F. Supp. 2d 1341, 1346 (N.D. Ala. 2007) (quoting *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997)) ("[w]e hold that a motion to disqualify filed under § 455(b) must be filed within a reasonable time after the grounds for the motion are ascertained. Certainly, where the facts are known before a legal proceeding is held, waiting to file such a motion until the court has ruled against a party is untimely."). "[A] party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *Nordbrock v. U.S.*, 2 F. App'x 779 (9th Cir. 2001) (citation omitted). Rather, "[a] party must proceed with absolute diligence to raise the disqualification of a judge at the earliest possible moment after learning of facts giving rise to a belief of a demonstration of bias or prejudice indicating disqualification." *Nichols*, 2013 WL 12146126, at *2 (citations omitted).

According to the record in this case, Johnson's allegations appear to be based on the Court's rulings on various discovery issues, its ruling on the Motion to Appear Telephonically, and

statements made during the July 19, 2017, hearing. The allegations, even if taken as true, do not establish cause for recusal.

Because Johnson's allegations consist of judicial rulings and comments made during the course of the judicial proceedings in this Adversary Proceeding, the extrajudicial doctrine does not come into play. In order to prevail, Johnson must show that the Court's rulings and remarks in this case "display[ed] a deep-seated and high degree of antagonism or favoritism." For the reasons set forth herein, Johnson has made no such showing.

At no time during this Adversary Proceeding did the Court state that the DOE's counsel was a "friend." The Court can only infer that Johnson was referring to the remarks made at the July 19, 2017, hearing regarding discovery. To that extent, Johnson has mischaracterized the Court's comments regarding compliance with Court Orders when the DOE's counsel appeared in bankruptcy cases as an Assistant U.S. Attorney assigned to represent an agency of the federal government.

The Court finds no benefit in offering a point-by-point response to all of the factual allegations made by Johnson during the February 15th hearing and in the Motion to Stay. *See Haas*, 292 B.R. at 179-180. Johnson stated that the Court "again and again allowed Defendant to continue and continue this case to disadvantage Plaintiff despite her objections." (AP Doc. No. 39 at 1). At no time during the pendency of this Adversary Proceeding has the DOE requested a continuance. To the contrary, the Court has continued the trial of the Adversary Proceeding at Johnson's request, and over the objections of the DOE. Based on the foregoing, the Court finds Johnson's allegations are without merit.

Further, Johnson stated that "[d]espite Plaintiff's immediate objections, this Court allowed Defendants to perform discovery" (*Id*.). Throughout this Adversary Proceeding, the Court has

balanced the DOE's need to conduct discovery with the sensitive issues identified by Johnson. The Court has made it clear that Johnson's blanket statement that she was not going to comply with discovery would not suffice. The Court asked both parties to work together to narrow down the discovery that the DOE deemed necessary to defend the Complaint, and what Johnson believed she should not be required to disclose. To that end, the Court provided a procedure in the Discovery Orders to resolve all of the discovery disputes. Unfortunately, Johnson declined to use the procedure to address any of her concerns about disclosure.

Additionally, Johnson averred that the Court "refused Plaintiff an opportunity to appear via telephonically and/or appearance via satellite" (*Id.*). This allegation is also without merit. To accommodate Johnson, the Court authorized her to appear telephonically for hearings as long as she made the appropriate arrangements with the Courtroom Deputy at least three days before the scheduled hearing. For the reasons set forth in the record, the Court denied Johnson's request to appear by telephone or video for the trial of the Amended Complaint (AP Doc. No. 30). Johnson has appeared before the Court telephonically for several hearings. In spite of Johnson's failure to comply the November 16th Order, the Court also allowed Johnson to appear telephonically for the hearing on the Motion for Sanctions and the Motion to Transfer.

Moreover, the Court's rulings do not constitute a valid basis for recusal. Other than denying Johnson's Motion to Appear via Telephone or Video for the trial of her Amended Complaint, the Court's rulings in this Adversary Proceeding have not been adverse to her. If anything, the rulings have benefited her. On numerous occasions, the Court acknowledged Johnson's concerns about sensitive issues, and implemented procedures to address those concerns and to resolve the discovery disputes. Unfortunately, Johnson declined to use those procedures. The Court further

24

accommodated Johnson by allowing her to appear telephonically on all matters except for the trial of her Amended Complaint.

In short, Johnson has not shown the appearance of partiality as required under § 455(a). The allegations contained in the Motion to Stay are nothing more than "unsupported, irrational, or highly tenuous speculation." *Cerceda*, 188 F.3d at 1293. Consequently, an "objective, disinterested, lay observer fully informed of the facts" would not "reasonably" question the Court's impartiality." *See* 28 U.S.C. § 455(a) and *Amedeo*, 487 F.3d at 828. Accordingly, recusal is not warranted under § 455(a).

Likewise, the Court's rulings and remarks were made during the course of this judicial proceeding, and they were not derived from an extrajudicial source. The rulings and remarks do not display a "deep-seated favoritism towards [the DOE] or antagonism toward [Johnson].'" *Coble,* 2018 WL 564948, at * 7 (citation omitted). Hence, there has been no showing of actual bias or prejudice to warrant recusal under § 455(b)(1).

Moreover, the Motion to Stay is untimely. The hearing, where this Court commented about compliance with discovery orders by the DOE's counsel in response to Johnson's Second Objection, took place in July 2017. Johnson waited seven (7) months after the hearing, and eight (8) months after the Order compelling discovery, to make an oral request for recusal, and to file the Motion to Stay. During the intervening time, the Court held hearings, entered orders, and granted Johnson's request to continue the trial. Yet, Johnson did not raise the alleged bias or move for recusal until the day of the continued trial. "The[se] facts beg the question of why [Johnson] waited so long before filing the present motion[] for recusal." *Nichols*, 2013 WL 12146126, at *1. Based on the record in this case, this Court finds that the oral request for recusal and the Motion

to Stay are not well-founded, are untimely under the "reasonable diligence" standard, and are due to be denied.

**The Motion to Transfer**

The Alaska Bankruptcy Court has already determined that venue for the claims asserted in the Adversary Proceeding is not proper before that court. Following the denial of the motion to consolidate and the dismissal of the adversary proceeding by the Alaska Bankruptcy Court, Johnson filed the Motion to Transfer in this Court.

"Section 1409 of title 28 of the United States Code governs venue of adversary proceedings arising under, arising in or related to title 11 cases. Subject to [certain] exceptions ..., venue of adversary proceedings is always proper, in the first instance, in the district court where the title 11 case is pending." *Enron Corp. v. Harpreet S. Arora (In re Enron)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004) (citation omitted). *See also Irwin v. Beloit Corp. (In re Harnischfeger Indus.)*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000) ("the bankruptcy court in which the debtor's case is pending, the home court, is the proper venue for adjudicating all proceedings in the case."); *Terry Mfg. Co. Inc. v. The Steel Law Firm, P.C. (In re Terry Mfg.)*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005) ("there is a strong presumption in favor of maintaining venue where the bankruptcy case is pending.").

Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice *or* for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). "Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferable upon a sufficient showing of either

26

the interest of justice or for the convenience of the parties." *Harnischfeger*, 246 B.R. at 435 (citing *A.B. Real Estate, Inc. v. Bruno's, Inc.* (*In re Bruno's*), 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998)).

"Transfer of venue pursuant to § 1412 requires a case-by-case analysis that is subject to broad discretion of the court." *Id. See also Terry Mfg.,* 323 B.R. at 509 ("[t]he power to transfer a case or a proceeding lies within the sound discretion of a bankruptcy court…"); *In re Steeley*, 243 B.R. 421, 439 (Bankr. N.D. Ala. 1999) (noting that transfer of venue under § 1412 requires a case-by-case analysis that is subject to broad court discretion). "[A] bankruptcy court's decision denying or transferring venue will only be reversed if the court's decision constitutes an abuse of discretion." *Enron Corp.,* 317 B.R. at 638 (citation omitted).

"The power to transfer a case [or proceeding] should be exercised cautiously." *Terry Mfg.*, 323 B.R. at 509 (citation omitted). *See also In re Enron Corp.,* 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("transferring venue of a bankruptcy case is not to be taken lightly.") (citing, in turn, *Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.),* 596 F.2d 1239, 1241 (5th Cir. 1979) ("the court should exercise its power to transfer cautiously.")). "The party seeking the change or transfer of venue has the burden to show that transfer is appropriate and further must do so by a preponderance of the evidence." *Harnischfeger*, 246 B.R. at 435.

### a. The Interest of Justice

The "interest of justice" prong is "a broad and flexible standard which must be applied on a case-by-case basis." *Harnischfeger*, 246 B.R. at 435 (citing *Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville),* 896 F.2d 1384, 1391 (2nd Cir. 1990)). *See also In re Trammell Family Lake Martin LLC*, 567 B.R. 201, 205 (Bankr. M.D. Ala. 2017). When addressing this prong, the courts consider whether the transfer of venue "will promote the efficient

27

administration of the estate, judicial economy, timeliness, and fairness." *Enron Corp.*, 284 B.R. at 388 (citing *Manville*, 896 F.2d at 1391). The courts have applied the following factors in order to determine whether a transfer is in the interest of justice:

(a)     Economics of estate administration;

(b)     Presumption in favor of the "home court;"[8]

(c)     Judicial efficiency;

(d)     Ability to receive a fair trial;

(e)     The state's interest in having local controversies decided within its borders, by those familiar with its laws;

(f)     Enforceability of any judgment rendered; and

(g)     Plaintiff's original choice of forum.

*Harnischfeger*, 246 B.R. at 435-437. *See also Terry Mfg.*, 323 B.R. at 509-510. Application of these factors weigh against transfer of the Adversary Proceeding to the Alaska Bankruptcy Court.

**(1) Economics of Estate Administration**

One of the most important factors to be considered in determining whether to transfer venue of a bankruptcy proceeding under the "interest of justice" prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate. *Harnischfeger,* 246 B.R. at 435. *See also Enron Corp*., 274 B.R. at 343 ("[t]he factor given the most weight is the promotion of the economic and efficient administration of the estate.") (citation omitted). The chapter 7 trustee entered a Report of No Distribution in Johnson's Bankruptcy Case on January 17, 2017 (Doc. No. 21), and the Court entered an Order Discharging Debtor the following day. The Bankruptcy Case remained open to allow Johnson to prosecute the Adversary Proceeding and

---

[8] "The 'home court' is the court in which the debtor's bankruptcy case is pending." *Harnischfeger*, 246 B.R. at 429 n.15.

various other matters. The other matters have been resolved, and this Adversary Proceeding is the only matter remaining. Hence, the retention or transfer of the Adversary Proceeding will have little impact on the administration of the estate. Accordingly, this factor is neutral.

### (2) Presumption in Favor of Home Court

As the Alaska Bankruptcy Court noted, "'[i]t is … the general policy of the bankruptcy code that all proceedings in a bankruptcy case be conducted in the district in which the bankruptcy petition was filed….'" (quoting *Burley*, 738 F.2d at 988) (AP Doc. No. 41 at 3). There is a strong presumption in favor of maintaining venue of bankruptcy proceedings in the home court. *See Terry Mfg.,* 323 B.R. at 509; *Waddell v. Holiday Isle, LLC*, No. 2:08-CV-292, 2008 WL 11377759, at *1 (N.D. Ala. Dec. 19, 2008) ("the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy") (citing *In re Manville*, 896 F.2d at 1391). Acknowledging the general presumption, this factor weighs against transfer.

### (3) Judicial Efficiency

Johnson has not presented a convincing argument that transfer of the Adversary Proceeding significantly improves judicial efficiency.

> Judicial efficiency concerns numerous issues, some of which overlap with the other factors: the home court's familiarity with the substantive issues and familiarity with the law to be applied in the proceeding (i.e., the "learning curve"); the caseload of the respective courts and thus whether the time to trial is shorter or substantially longer in one forum as opposed to the other; the respective availability of the courts for resolving discovery disputes and for moving the case toward trial at a reasonable pace given the issues involved.

*Harnischfeger*, 246 B.R. at 440. The Adversary Proceeding has been pending before this Court since October 13, 2016. The Court has reviewed all the pleadings, has held six status conferences and various other hearings, and, as a consequence, is very familiar with this case. The Adversary

Proceeding was set for trial, a second time, on February 15, 2018, and, except for the submission of documentation for limited purposes, the Court has closed the evidence. The Court is ready to proceed, and Johnson has presented no evidence that the Alaska Bankruptcy Court is more familiar with the issues in this case, or that it can render a decision on the merits of the Amended Complaint more efficiently than this Court. Accordingly, it is more efficient for the Adversary Proceeding to remain here, in the Northern District of Alabama.

### (4) Ability to Receive a Fair Trial

For the reasons stated previously, Johnson has not demonstrated through objective or reasonable evidence that the Alaska Bankruptcy Court will be more impartial than this Court. There is a presumption that Johnson will receive a fair trial, regardless of whether this Court or the Alaska Bankruptcy Court determines the outcome of the Adversary Proceeding. Therefore, the Court views this factor as neutral.

### (5) The State's Interest in Having Local Controversies Decided Within its Borders, By Those Familiar with its Laws

The Adversary Proceeding does not involve a cause of action under the laws of Alabama or Alaska; the question presented is one of dischargeability under federal bankruptcy law. Consequently, this factor is not relevant to the Court's analysis.

### (6) Enforceability of any Judgment Rendered

This factor is not relevant to the Court's decision.

### (7) The Plaintiff's Original Choice of Forum

Johnson chose to file the Adversary Proceeding in the Northern District of Alabama, and the case should remain here unless the requirements for transfer are met.

30

Based on the evidence in the record, Johnson has not met the burden of proof for a finding that transfer of the Adversary Proceeding to the Alaska Bankruptcy Court is warranted under any of the factors that constitute the "interest of justice" prong of § 1412.

### b. The Convenience of the Parties

"[T]he power to transfer a case should be exercised cautiously, and 'a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor.'" *Capmark Fin. Grp., Inc. v. Goldman Sachs Credit Partners L.P.* (*In re Capmark*), 11 Civ. 7511, 2012 WL 698134, at *13 (Mar. 5, 2002) (quoting *EF Capt'l Mgmt*, No. 11-12646, 2011 WL 2838115, at *3 (Bankr. S.D.N.Y. Jul. 14, 2001)). "Merely shifting the balances of inconveniences from one party to another is not sufficient to justify a transfer of venue." *Terry Mfg. Co.*, 323 B.R. at 510 (citation omitted). The factors applicable to the "convenience of the parties" prong of § 1412 are:

(a)     Location of the plaintiff and defendant;

(b)     Ease of access to necessary proof;

(c)     Convenience of witnesses;

(d)     Availability of subpoena power for the unwilling witnesses; and

(e)     Expense related to obtaining witnesses.

*Id.*

The primary ground for the Motion to Transfer is Johnson's relocation to Alaska. While Johnson suggests that change in venue would benefit her, she does not address the interests of the DOE. The fact that Johnson would find it more convenient to proceed in a different venue must be weighed against the DOE's interests.

In the Opposition to the Motion to Transfer, the DOE maintains that it "has invested significant time and effort to prepare this case, to engage with Plaintiff during pretrial proceedings, to comply with the Court's orders, to try this case, and to secure a resolution of this litigation" (AP Doc. No. 54 at 5). The Court finds that a change in venue would result in increased expense, duplication of effort, and delay for the DOE because a different court, the Alaska Bankruptcy Court, and a different United States Attorney's office to represent the DOE, would be required to familiarize themselves with the issues and history of the case at hand. It is well settled that, where the movant only shows that inconvenience will merely be shifted from one party to another, the court should deny the change of venue motion. *Harnischfeger,* 246 B.R. at 437 (citing *In re Geauga Trenching Corp.,* 110 B.R. 638, 654 (Bank. E.D.N.Y. 1990); *De Rosa v. C.P.P. Corp.* (*In re Legend Indus., Inc.*), 49 B.R. 935, 938 (Bankr. E.D.N.Y. 1985)). Accordingly, based upon the shift in inconvenience from Johnson to the DOE that would occur if this Adversary Proceeding were transferred, the Motion to Transfer is due to be denied.

Moreover, except for the reopening of evidence and the record for limited purposes, the Court has closed the evidence. Hence, at this juncture, the factors under the "convenience of the parties" prong have limited application in determining whether to transfer the Adversary Proceeding.

Finally, the Court believes that granting the Motion to Transfer after the trial date and after closing the evidence would encourage unreasonable delay and forum shopping. Johnson filed the Alaska Adversary Proceeding and the motion to consolidate in the Alaska Bankruptcy Court. The Alaska Bankruptcy Court treated her motion to consolidate as a motion to transfer, and it concluded that venue was improper in that court. In reaching its conclusion, the Alaska Bankruptcy Court discerned that "[t]he filing of the duplicate action in a distant court on the eve of trial strongly

32

suggests an intent to interfere with the scheduled trial in the original action" (AP Doc. 41 at 4). Then, Johnson filed the Alaska Bankruptcy Case. In the Show Cause Order on why the Alaska Bankruptcy Case should not be dismissed, the Alaska Bankruptcy Court again questioned the intent of Johnson, stating that it "has doubts regarding the debtor's purpose in filing this case" (Alaska BK Case, Doc. No. 11).

Johnson filed the motions in the instant case; one motion seeks the recusal of the undersigned judge and the other motion seeks to transfer the Bankruptcy Case and the Adversary Proceeding to the Alaska Bankruptcy Court. Like the Alaska Bankruptcy Court, this Court questions Johnson's intent. By filing the motions here in the Northern District of Alabama and simultaneously initiating similar proceedings in the Alaska Bankruptcy Court, Johnson's actions indicate a pattern of delay, unnecessary litigation, and forum shopping which this Court cannot condone. To do so would undermine judicial efficiency and economy. *Trammell Family Lake Martin*, 567 B.R. at 206 (concluding that there was no good faith reorganization purpose and in the interest of justice, "this civil action is transferred to the Southern District of Alabama. The case had been pending there for three years and was scheduled for trial …. The two bankruptcy filings are not part of a good faith effort to reorganize but rather a tactical effort to transfer the fraudulent conveyance case here.").

Johnson has not met the burden of proof required under the "convenience of the parties" prong of § 1412. Furthermore, the evidence in the record does not require or persuade this Court to transfer the Adversary Proceeding.

Based upon the foregoing, the Court finds that Johnson has not shown by a preponderance of the evidence that the "interest of justice" or the "convenience of the parties" requires the transfer

of the Adversary Proceeding to the Alaska Bankruptcy Court. Therefore, the Motion to Transfer is due to be denied.

**The Motion for Sanctions**

In the Motion for Sanctions, the DOE requests, among other things, the dismissal of the Adversary Proceeding pursuant to Bankruptcy Rule 7037(b)(2)(A) based upon Johnson's failure to comply with the Court's discovery orders and her lack of candor and good faith. Courts have "broad discretion to control discovery," including "the ability to impose sanctions on uncooperative litigants." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Rule 37 of the Federal Rules of Civil Procedure (the "Rules"), which is applicable in bankruptcy by Bankruptcy Rule 7037, governs sanctions for failure to cooperate with discovery. Under subsection (b)(2)(A) of this Rule, if a party "fails to obey an order to provide or permit discovery," the court may order a range of sanctions, including "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A).

Regardless of whether the Court imposes any other sanction, once the Court finds that a party has failed to comply with its order, it "must order the disobedient party, the attorney advising that party, or both to pay the reasonable attorney fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Howell v. Martin Fin., LLC (In the Matter of Martin)*, 542 B.R. 612, 616 (Bankr. N.D. Ga. 2015) (quoting Fed. R. Civ. P. 37(b)(2)(C)). "Apart from that requirement, the choice of sanction is largely left to the discretion of the Court." *Id.* (citing *Phipps*, 8 F.3d at 790).

"There is a need for strict adherence to Rule 37 so as to prevent parties from flouting discovery orders," *Reed v. Fulton Cnty. Gov't*, 10 Fed. Appx. 674, 675 (11th Cir. 2006), and the Court must be mindful of the dual role that sanctions play: an appropriate sanction must both punish the offending conduct and serve to deter future violations, *Nat'l Hockey League v. Metro. Hockey Club, Inc*., 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (per curiam) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court … not merely to penalize those whose conduct [warranted] such sanction, but to deter those who might be tempted to such conduct …."). This is especially true when the disobedient party has acted willfully and failed to convince the Court that it used "all reasonable efforts" to comply with the order. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) …. Finally, "the obedience of the judicial orders is of paramount importance and … courts do not lightly excuse a failure to comply." *Id*. at 726.

*Id*. at 616-17.

When imposing the sanction of dismissal or default, the court must find that the disobedient party's failure to comply with the court's order was willful or in bad faith. *Gebhardt v. Martin (In the Matter of Martin)*, No. 14-11743, AP No. 15-1065, 2017 WL 2222234, at *3 (Bankr. N.D. Ga. May 18, 2017). *See also Reed*, 170 F. App'x. at 675 (same). "Failure to comply as the result of 'negligence, misunderstanding, or inability to comply will not justify … default judgment or dismissal.'" *Id*. (quoting *Malautea v. Suzuki Motor Co. Ltd*., 987 F.2d 1536, 1542 (11th Cir. 1993)). The disobedient party bears the burden of justifying his conduct. *Id*. (citation omitted). The party may not rely on "mere assertion[s] of inability," but must "satisfy his burden of production on the point by introducing evidence in support of his claim." *Id*. (citations omitted). *See also Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989) (same). "This evidence must be sufficient to lead the Court to conclude that the party 'has made all reasonable efforts to comply.'" *Id.* (citing *Haye*s, 722 F.2d at 725) (holding that the district court's application of a more lenient "some effort" standard was an abuse of discretion).

35

"'Conduct that is within the party's control is all that is required to demonstrate willfulness.'" *Lozman v. City of Riviera Beach*, No. 08-80134, 2014 WL 12279506, at *4 (S.D. Fla. Jan. 10, 2014) (quoting *Versage v. Marriott Int'l, Inc.*, No. 6:05-cv-974-Orl-19JGG, 2006 WL 3614921, *6 (M.D. Fla. Dec. 11, 2006) (citing *Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1167 (5th Cir. 1981)) ("recalcitrance was not based on factors beyond [party's] control and must be characterized as flagrant disregard and willful disobedience"); *Henry v. Gill Indus., Inc.*, 983 F.2d 943 (9th Cir. 1993) ("disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault").

"[W]here a litigant has failed to comply with discovery rules and related court orders, dismissal under Rules 37(d) and 41(b) is coextensive." *Hayes v. Toole*, No. 6:16-cv-20, 2018 WL 1400974, at *3 (S.D. Ga. Mar. 20, 2018) (citations omitted). Rule 41(b), which is applicable in bankruptcy by Bankruptcy Rule 7041, states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) ... operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

In the Eleventh Circuit, the standard for dismissal with prejudice under Rule 41(b) is "whether there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). Dismissal with prejudice is "a sanction of last resort, applicable only in extreme circumstances." *Goforth,* 766 F.2d at 1535. "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, *especially where the litigant has been forewarned*, generally is not an abuse of discretion." *Schillaci v. Wal-Mart Stores E., L.P.*, Case No. 2:17-CV-337-VEH, 2017 WL 4572312, at *2 (N.D. Ala. Oct. 13, 2017)  (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (emphasis

36

added). *See also Zow v. Regions Fin. Corp.,* 595 F. App'x. 887, 888–89 (11th Cir. 2014) (if a party disregards an order despite being warned of the possible consequences, dismissal is generally not an abuse of discretion); *Tanner v. Neal,* 232 F. App'x. 924 (11th Cir. 2007) (same). This Court must exercise caution and discretion when deciding whether to dismiss an action under Rule 37(b) or Rule 41(b). These concerns notwithstanding, dismissal with prejudice is warranted in this Adversary Proceeding.

### a. Willful Disregard of Court Orders

"Intentional and willful disregard of the Court's orders justifies dismissal with prejudice." *Smith v. Atlantic S. Bank (In re Smith)*, No. 07-20244, AP. No. 09-02033, 2010 WL 5690097, at *10 (Bankr. S.D. Ga. Jan. 31, 2010). In the instant case, the Court has held multiple status conferences and hearings regarding the discovery disputes. Through its discovery rulings, the Court has aimed to move this litigation forward. The Court has provided reasonable accommodations to Johnson on several occasions, in part, because she is proceeding pro se. But, Johnson's pro se status does not excuse compliance from the discovery requirements or the orders of this Court. The Eleventh Circuit has repeatedly held that "pro se litigants are subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders." *United States v. Varnado*, 447 F. App'x. 48, 51 (11th Cir. 2011) (citing *Moon*, 863 F.2d at 837). *See also Reed*, 170 F. App'x. at 676 ("Reed's pro se status does not excuse his noncompliance; pro se litigants are obligated to obey discovery orders."); *Zow,* 595 F. App'x. at 888–89 (district court's dismissal of case with prejudice was appropriate sanction for pro se plaintiffs' willful failure to comply with discovery order directing them to attend Rule 26(f) conference); *Shortz v. City of Tuskegee, Ala.,* 352 F. App'x. 355, 359–60 (11th Cir. 2009) (district court did not abuse its discretion in dismissing pro se plaintiff's claims with prejudice for failure

37

to comply with the court's discovery orders); *Smith v. Atlanta Postal Credit Union,* 350 F. App'x. 347, 350–51 (11th Cir. 2009) (district court did not abuse its discretion in dismissing pro se plaintiff's employment discrimination case with prejudice for failure to comply with her discovery obligation, the procedural rules applicable to her case, and the court's discovery order, pursuant to Rule 37(b)(2)(A) and Rule 41(b)); *Welch v. Comcar Indus.,* 139 F. App'x. 138, 139 (11th Cir. 2005) (district court did not abuse its discretion in dismissing pro se plaintiff's case with prejudice pursuant to Rule 37(b)(2) and 41(b) where [plaintiff] failed to comply with court orders directing him to participate in discovery on at least five occasions); *Riccardi v. Louis,* No. 5:13-cv-70-RS-GRJ, 2014 WL 4428149 (N.D. Fla. Sept. 9, 2014) (dismissing pro se plaintiff's civil rights case with prejudice for failure to prosecute and repeated failure to comply with court orders, where plaintiff failed to attend two scheduled depositions, failed to respond to two motions for sanctions and an order to show cause, failed to pay monetary sanctions as ordered by the court, and failed to provide the court and opposing counsel with a phone number where he could be reached).

Johnson has not complied with multiple orders of the Court (i.e. the Discovery Orders (AP Doc. Nos. 16 and 21); the Trial Order (AP Doc. No. 23); and the November 16th Order (AP Doc. No. 30)) relating to discovery (collectively, the "Orders"). Over a year has passed since the DOE served Johnson with its discovery requests and, according to the DOE, Johnson has only produced documents which could at best be deemed responsive to 1 of 36 requests for production and 1 of 28 interrogatories. After the entry of the First Discovery Order granting the DOE's Motion to Compel, Johnson did not produce any additional discovery responses. Instead, she filed the Second Objection to the DOE's discovery requests. At the July 19, 2017, hearing on the Second Objection, the Court made it clear that, while the Court was sensitive to Johnson's concerns, the DOE must be permitted to conduct reasonable discovery. Consequently, the Second Discovery Order

provided that if Johnson opposed the disclosure of specific documents, she could file a list of the documents where she opposed production, and she could request that certain information be redacted or produced under seal, or she could request a protective order. Following the entry of the Second Discovery Order, the DOE received no meaningful, discovery information from Johnson. The record showed that, although the parties communicated about the discovery disputes, they were unable to resolve any of the issues. In the November 16th Order that granted in part, and denied in part, the Emergency Motions, the Court cautioned:

> The Court previously entered two Orders, on May 17, 2017 (Doc. No. 16) and July 25, 2017 (Doc. No. 21), that compelled Johnson to respond to the DOE's discovery request. The procedure established by the Order of July 25, 2017 to resolve discovery disputes has not be utilized. *If this Court determines that there has been a failure to make disclosures, to cooperate in discovery, or to obey a discovery order, the Court may address such conduct pursuant to Federal Rule of Bankruptcy Procedure 7037.*

(AP Doc. No. 30 at 2) (emphasis added). Despite the Court's explicit warning, Johnson did not comply with the Orders or her discovery obligations.

Johnson could have requested the redaction of certain information, the production of certain documents under seal, or the entry of a protective order. She made no such requests, other than an informal request during one of the hearings to seal the Emergency Motions, which this Court denied (AP Doc. No. 30). *See Reed*, 170 F. App'x. at 675 (noting that plaintiff "could have requested a protective order if he felt threatened"); *Functional Prod. Trading, S.A. v. JITC, LLC*, No. 12-CV-00355, 2013 WL 4482507, at *3 (N.D. Ga. Aug. 20, 2013) (defendant claimed he was "afraid to travel to the United States" for his deposition because he feared for his life, but he failed to seek a protective order; court sanctioned him with entry of a default judgment for his willful noncompliance). In light of the foregoing, the Court cannot find that Johnson has made "all reasonable efforts" to comply with the Orders.

39

In addition, the DOE maintains that Johnson did not file and serve the witness and exhibit lists, or provide copies of the exhibits to be used at trial, as required by the Trial Order. Furthermore, despite the requirements of the Court's November 16th Order, Johnson did not make timely arrangements with the Courtroom Deputy to appear telephonically for the Motion for Sanctions or the Motion to Transfer. Johnson's failure to appear at three of the status conferences, and her decision to ignore the directives of the Orders, provide further evidence of willful contempt and warrant the dismissal of the Adversary Proceeding with prejudice.

### b. Failure to Appear at Trial

Johnson was aware of the trial date and did not appear, which requires dismissal of this case with prejudice. *Luster v. Ledbetter*, 665 F. Supp. 2nd 893, 897 (M.D. Ala. 2009) ("[w]here a plaintiff does not appear at the trial date ... Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a 'failure to prosecute.'"); *Roberts v. Roberts (In the Matter of Roberts)*, No. 05-43073, AP No. 06-4028, 2007 WL 7688769, at *1 (Bankr. S.D. Ga. Feb. 7, 2007) ("[a] failure to appear at trial 'would presumably justify dismissal under Rule 41(b), since the [pro se] plaintiff is not represented by counsel and thus his presence would be indispensable for conducting a trial, particularly one in which he would presumably bear the burden of proof.'").

Johnson has made claims in the Adversary Proceeding and in the Bankruptcy Case that she was not properly served with copies of pleadings and hearing notices. Bankruptcy Rule 7004(b)(9) of the allows service on the debtor at the address listed in the petition until he or she files a change of address. Specifically, Bankruptcy Rule 7004(b)(9) provides, in relevant part:

> (b) Service by first class mail: Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) FR Civ P, service may be made within the United States by first class mail postage prepaid as follows:

40

> (9) Upon the debtor, after a petition has been filed by or served upon the debtor and until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or to such other address as the debtor may designate in a filed writing.

Fed. R. Bankr. P. 7004. "[T]he Rule 'implicitly requires diligence to provide notice of the change [in address]....'" *Ruiz v. Loera (In re Ruiz)*, No. RS 04-23456-PC, AP No. RS 05-01048-PC, 2006 WL 6811033 (9th Cir. BAP Apr. 7, 2006). Moreover, Bankruptcy Rule 4002(a)(5) explicitly requires a debtor "to file a statement of any change of the debtor's address." Fed. R. Bankr. P. 4002(a)(5).[9]

The record reflects that the DOE served the pleadings on Johnson at the same address listed on her Complaint, her Amended Compliant, and her chapter 7 petition. The Clerk of Court, through the Bankruptcy Noticing Center, sent notices to Johnson via email at the electronic address that she provided in the Debtor's Electronic Noticing Request (Doc. No. 4). At no time in the Bankruptcy Case or this Adversary Proceeding did Johnson update her Electronic Noticing Request to reflect a new email address, cancel her Electronic Noticing Request, or designate a new, postal mailing address for service.

Accordingly, the Court finds that Johnson received proper notice of all matters in the Adversary Proceeding based on the postal mailing address listed in her Complaint and her Amended Complaint, and the electronic address that she provided in the Electronic Noticing Request. *See In re Otto*, 409 B.R. 912, 916-17 (Bankr. N. Minn. 2009) ("[w]here notices are sent to the address last listed by the debtor, in documents filed with the court, as his mailing address, due process is satisfied.") (citing *Bak v. Vincze (In re Vincze),* 230 F.3d 297, 298 (7th Cir. 2000)

---

[9] Bankruptcy Rule 4002(a)(5) states that "[i]n addition to performing other duties prescribed by the Code and rules, the debtor shall … file a statement of any change of the debtor's address." Fed. R. Bankr. P. 4002(a)(5).

(per curiam); *DeVore v. Marshack (In re DeVore),* 223 B.R. 193, 196–97 (9th Cir. BAP 1998); *Green Tree Fin. Srv. Corp. v. Karbel (In re Karbel),* 220 B.R. 108, 112–113 (10th Cir. BAP 1998) (and cases cited therein)).

### c. Prejudice Suffered by the DOE

"Dismissal is warranted when a defendant has suffered prejudice as a result of the plaintiff's conduct." *Smith*, 2010 WL 5690097, at *11 (citation omitted). The DOE has expended significant time and effort to conduct discovery, and Johnson has not complied in response. There is no doubt that Johnson's lack of response has prejudiced the DOE by preventing it from conducting discovery, from evaluating the merits of the § 523(a)(8) claims, and from adequately preparing its defense to the Amended Complaint. Furthermore, as a result of Johnson's failure to respond to discovery, the DOE incurred additional time and expense in preparing the Motion to Compel and the Motion for Sanctions. Additionally, the DOE has been required to respond to a number of motions filed by Johnson, most of which, it appears, were filed by her to delay the trial or to forum shop. Finally, the DOE appeared in Court, ready for trial, on two separate dates where Johnson did not appear in person. *See Luster*, 665 F. Supp. 2d at 897-98 ("a plaintiff's failure to appear on the date of trial has the potential to cause great prejudice to the defendant, especially where the defendant has taken the time and expense of preparing and appearing for trial himself."). The Court finds that the prejudice to the DOE also weighs in favor of dismissal.

### d. Legitimacy of Excuse

The Court places a premium on safety and security for all litigants who enter the courtroom seeking the resolution their disputes. The Court acknowledges that some litigants in bankruptcy may also be struggling with domestic matters under state law, including divorce, child custody, and allegations of abuse. While the Court remains sensitive to these concerns and the impact they

may have on a litigant, the Court must ensure that such matters do not impede the bankruptcy proceedings without just cause, especially when the domestic matters do not arise in, or are not related to, a case under title 11. Such is the case with this Adversary Proceeding.

Not once, but twice–on the eve of trial–Johnson requested that the Court continue the trial of the Amended Complaint based on her inability to appear in person. Johnson alleged that she did not appear in person for the trial on November 15, 2017, because she had been placed in "Protective Custody for continued Domestic Violence attacks on herself and her children…." (AP Doc. No. 26 at 1). Over the DOE's objection, this Court continued the trial to allow Johnson to appear in person to try her case. At the continued trial on February 15, 2018, Johnson again failed to appear in person, and alleged this time that she was in a "protective environment for domestic violence," and that her absence was due to "medical issues that prevented her from traveling" to the Northern District of Alabama.

Based on the very serious nature of Johnson's allegations, the Court entered the February 20th Order that afforded her an opportunity to submit documents to substantiate the reasons for her failure to appear in person at trial (Doc. No. 40). Johnson did not supply any documentation in compliance with the Order. Instead, Johnson filed the Motion to Stay and the Motion to Transfer, and requested the recusal of the undersigned judge. Other than Johnson's unsubstantiated comments in open court and in her filings, the Court has received no evidence to validate or corroborate Johnson's claims of domestic violence against her and her children, or her claims of medical issues that prevent her from traveling.

The DOE, on the other hand, did comply with the February 20th Order. It filed certified documents from three different state courts located in Alabama (AP Doc. No. 48). The state court records do not show any threats to the safety or the medical status of Johnson or her children;

rather, the certified documents reveal criminal matters pending *against* Johnson in three different cases, including a motion to revoke Johnson's probation in one case (*Id.*, Ex. A-4 at 2-5), an order revoking her bond in another case (*Id.*, Ex. B-4 at 2), and an order of protection enjoining Johnson from threatening, harassing, stalking, or otherwise communicating with a victim in a third case (*Id.*, Ex. C-2 at 2-5).

Given Johnson's pattern of delay, her refusal to substantiate any valid basis for her absence from Court, and the certified state court documents submitted by the DOE, the Court finds that dismissal of the Adversary Proceeding, with prejudice, is warranted. *Smith*, 2010 WL 5690097, at *10-11 (finding the plaintiff had no legitimate excuse for their failure to prosecute their claim); and *Luster*, 665 F. Supp. 2d at 898 (finding that some explanation must be offered, the court allowed the plaintiff ample time to explain his absence. When the plaintiff failed to provide an adequate response, the court dismissed the case with prejudice pursuant to Rule 41(b)).

### e. Prejudice of the Operations of the Court

The purpose of Rule 41(b) is to "allow[ ] the Court to manage its docket, enforce its orders, and effectuate the prompt resolution of litigation." *Smith,* 2010 WL 5690097, at *11 (citing *Direct Media Corp. v. Camden Telephone and Telegraph Co., Inc.,* 989 F. Supp. 1211, 1220 (S.D. Ga. 1997)). The Clerk's office and the Court's judicial staff have expended hours to docket, set for hearing, address, and otherwise manage the pleadings filed by Johnson. In light of Johnson's noncompliance with the Bankruptcy Rules and the Orders of the Court, the expenditure of clerical and judicial resources should not continue. The Court must enforce its Orders and effectuate the prompt resolution of this litigation. Accordingly, this Adversary Proceeding is due to be dismissed with prejudice.

44

**f. Lesser Sanctions Will Not Suffice**

In conclusion, the Court finds that dismissal, with prejudice, is warranted under Rules 37(b)(2)(A) and 41(b), and lesser sanctions will not suffice. Johnson has exhibited a pattern of intentional delay and a willful disregard for the Court's Orders. Johnson's multiple violations of the Court's Orders and a lack of prosecution of her case have prejudiced the DOE and have burdened the Court.

Although the Court has given Johnson several opportunities to provide satisfactory discovery responses to the DOE, and to substantiate her absences from trial, she has not done so. With the November 16th Order, this Court warned Johnson that a failure to cooperate with discovery or obey a discovery order could result in sanctions under Bankruptcy Rule 7037 (AP Doc. No. 30). The Court has also attempted to accommodate Johnson by allowing her to appear telephonically at hearings, and by continuing the trial of the Adversary Proceeding. Unfortunately, Johnson has not abided by the directives of the Court as required by the November 16th Order.

The certified state court records submitted as evidence by the DOE reflect that Johnson has not been straightforward about the reasons for her failure to appear before this Court. She has not tendered any satisfactory reason for her failure to comply with the Court's Orders, or for her failure to prosecute the case.

Moreover, the deadlines set forth in the Trial Order have passed. The Adversary Proceeding was called for trial and the evidence has been closed. Accordingly, dismissal with prejudice is the only appropriate sanction. Lesser sanctions would be ineffectual and would not suffice.

Finally, the Court must decide whether to award expenses to the DOE under Bankruptcy Rule 7037(b)(2)(C). The record reflects that Johnson has two minor children, she and her family

have relocated to Alaska, and she has a pending chapter 13 case there. Based on the circumstances of this case, the Court finds that an award of expenses would be unjust. Dismissal of the Adversary Proceeding with prejudice is sufficient to penalize Johnson for her failure to comply. *See Mafcote, Inc. v. Fed. Ins. Co.*, No. 3:08-CV-11-S, 2011 WL 3793661, at *3 (W.D. Ky. Aug. 25, 2011) (finding that the "extreme sanction of dismissal" was sufficient to penalize the plaintiff for its conduct and to "deter those who might be tempted to such conduct in the absence of such a deterrent.").

**Conclusion**

Johnson filed a chapter 7 case in the Northern District of Alabama, and she received a discharge of her debts more than a year ago. In her chapter 7 petition, Johnson scheduled the DOE as a creditor based on the student loans that she obtained for veterinary and dentistry education. Under § 523(a)(8) of the Bankruptcy Code, student loans are not subject to discharge, unless their repayment would impose an undue hardship on the debtor and the debtor's dependents.

Johnson initiated this Adversary Proceeding, also in the Northern District of Alabama, to prove that her circumstances warranted the discharge of her student loans. As discussed in the preceding pages, the opportunity to make her argument before the Court included procedures, requirements, and penalties for noncompliance. Unfortunately, Johnson has not complied with the procedures or the requirements necessary to advance her case. Dismissal of the Amended Complaint with prejudice is appropriate here, and it means that the statutory default under § 523(a)(8) of the Bankruptcy Code is undisturbed and Johnson remains liable for her student loans.

For the reasons set forth above, the Court finds that the Motion to Stay and Motion to Transfer are due to be denied, the Motion for Sanctions is due to be granted, and the Adversary

Proceeding is due be dismissed with prejudice pursuant to Bankruptcy Rules 7037(b)(2)(A) and

7041(b) (incorporating Rules 37(b)(2)(A) and 41(b)).

Therefore, it is **ORDERED, ADJUDGED,** and **DECREED** that:

A.      The Motion to Stay is **DENIED**;

B.      The Motion to Transfer is **DENIED**;

C.      The Motion for Sanctions is **GRANTED**;

D.      The Adversary Proceeding is hereby **DISMISSED WITH PREJUDICE**; and

E.      The Court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 23rd day of May, 2018.

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge

Case 16-04196-DSC7    Doc 132    Filed 05/23/18    Entered 05/23/18 15:32:08    Desc Main
Document      Page 47 of 47